DOWLING, J.,
We read with nauseating frequency of the fantastic deals being offered to the public in the purchase of a new motor vehicle. Evelyn Frick was the recipient of such a bargain but alas the dealer wishes to renounce the contract and beseeches the court, as did Kathrinaof Petruchioin “The Taming of the Shrew” to “Pardon . . . my mad mistaking.”[1]
It seems that the octogenarian salesman misread the appraisal on Evelyn’s car, allowing her $2,500 as a trade-in rather than $25. The various documents were processed and Ms. Frick drove off with a ’78 Dodge Aspen (sticker price $6,053), with a payment of a little over $3,000, leaving behind her 1965 Dodge Polara. It was not until some weeks later that plaintiff discovered the error. Subsequently, the instant action in replevin was filed which was heard without a jury.
*495 In order to establish a right to possession justifying replevin, plaintiff must avoid the sales contract through which defendant obtained possession. The thrust of the dealer’s allegations thus actually amount to a request for equitable rescission. Since the case involves a sale of goods, we must first look to the statutory provisions of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12 A P.S. §2-302. §2-302 of the code allows the court to refuse enforcement of a contract found to be “unconscionable.” The section is generally held not applicable, however, to situations hke the present one where unconscionability, if it does exist, centers solely around the price term. Some cases have held contracts unconscionable purely on the basis of inadequate consideration: American Home Improvement v. MacIver, 105 N.H. 435, 201 A. 2d 886 (1964), for example, but such cases appear to represent the minority view nationally and have been criticized as not consonant with the intent of the code’s drafters. See 67 Mich. L.Rev. 1248 (1969).
The mistake was unilateral. Ms. Frick took no part in the appraisal or the reduction of the sales contract to writing and therefore could not have been a party to any error. The rule in such situations is that where a unilateral mistake occurs, the resulting contract is not voidable unless the nonmis-taken party is shown to know, or have reason to know, of the others mistake: McFadden v. American Oil Co., 215 Pa. Superior Ct. 44, 257 A. 2d 283 (1969); Restatement, Contracts §503.
The typical case in which contracts have been avoided for unilateral mistakes are those involving mistakes in computing bids for construction contracts. There, courts find reason to know of the *496 mistake if the errant bid is grossly disproportional to similar correct bids: Bethel Plumbing & Heating Co. et al. v. General State Auth., 32 D. & C. 2d 533, 81 Dauph. 173 (1963).
Plaintiffs authorities are all distinguishable. It quotes extensively from 13 Williston On Contracts §1578 (3d ed. 1970), but there the commentator consistently emphasizes in situations where the consideration is out of proportion to the value of the subject matter that the contract will be rescinded only where the other party realizes that a mistake has been committed and takes advantage of it. His excerpt from Restatement of Contracts §505, also contains a provision that a party knows that the contract does not accurately express the intention of the parties and knows what the real intention is. In Bethel Plumbing & Heating Co., supra, defendant admitted that when it opened the bids it realized that an error had been made.
The instant case thus turns on whether or not under the testimony the court can conclude that plaintiff has sustained its burden of proving that the purchaser knew, or should have known, that a mistake had been made. Ms. Frick is employed by the Department of Education and there is no evidence that she is particularly familiar with the machinations of trade-in allowances on the purchase of a new vehicle. There is some testimony that she thought that plaintiff might have considered her car as an antique. This is not a case where a person instantly seized upon an obvious error. The processing of the papers and the obtaining of the vehicle in question took several weeks in which time nothing was said about the amount allowed as the trade-in.
*497 It appears that Petruchio, despite Kathrina’s entreaty, could not forgive her mistake and we too must follow that bard and turn a deaf ear to plaintiffs complaint.
Accordingly, we make the following
ORDER
And now, July 21, 1978, a verdict is entered in favor of defendant.

. W. Shakespeare, Act IV, Sc. V.